[Nos. 43879-4-I; 43952-9-I.    Division One.    May 30, 2000.]

*In the Matter of the Marriage of* WENDY OLSON, *Respondent*, and GREGORY L. OLSON, *Appellant*.

*In the Matter of the Marriage of* DIANE M. OLSON, *Respondent*, and GREGORY L. OLSON, *Appellant*.

*Hyon Chun Pak*, for appellant.

*Wendy Olson*, pro se.

*Norm Maleng, Prosecuting Attorney*, and *Lisa Powell Nelson, Deputy*, for respondent Diane Klemz, the State, and the children.

PER CURIAM. — A trial court must consider a parent's request for child support modification under RCW 26.09.170 even if a bond or other security to ensure support payments is in place under RCW 26.18.150; the existence of the security does not render the parent's modification request moot.

## FACTS AND PROCEDURAL HISTORY

When Gregory Olson and his first wife, Wendy Olson, were divorced in November 1983, the superior court entered an order requiring him to pay Wendy $300 per month in child support for his son, Eric Carl Olson. After Olson's second marriage to Diane Olson, also known as Diane Klemz, ended in divorce in November 1987, the court entered an order requiring him to pay $551 per month in child support to Diane for his daughter, Linnea Marie Olson.[1] Olson did not fulfill these obligations.

In 1994, the Department of Social and Health Services,

---

[1] Of the $551, $251 was for Linnea's day care expenses.

acting on Wendy's behalf, obtained a lien for $40,398.68 on "[a]ll real and personal property" of Olson's based on his debt for past-due child support. In 1997, Diane filed a lien claim for $40,040.00 against the house Olson had inherited from his father in 1993. Immediately thereafter, Olson filed a quitclaim deed, transferring the home to his girl friend, Angel Townsend, for "no monetary consideration—love and affection." In January 1998, the State, acting on behalf of both of Olson's children, filed a petition to set aside this conveyance as fraudulent and sought payment of Olson's past and future child support obligations. Although the action began as a family law motion, it was eventually set for trial in superior court.

After a bench trial in June 1998, the trial court concluded that Olson's transfer of his home to Townsend was invalid under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW, finding that "Olson intended to defraud his former wives and children and prevent them from receiving past due child support by executing the Quit Claim deed with no equivalent value given in exchange when he was insolvent." Noting that the Clerk of the Court was holding $168,721.29 from the sale of the home,[2] the court ordered that this money "should be distributed to the mothers, as to their respective percentages of debt, and future support as follows" in pertinent part:

|  | Wendy Olson | Diane Klemz |
|---|---|---|
| Back Support: | $37,581.41 | $34,685.91 |
| . . . . | | |
| [F]uture [S]upport[3] | $6,000.00 | $7,200.00 |

The record indicates that the Washington State Support Registry subsequently assumed and periodically disburses

[2]Townsend sold the home after Olson fraudulently quitclaimed it to her.

[3]The court awarded two years of future child support to Diane for Linnea, and 20 months of future support for Eric because at that time Eric would be 22 and Olson's child support obligations to him complete.

the money for the awards of future child support payments.[4]

A few months after the trial, Olson filed for modification of his support obligations to both Wendy and Diane. But the judge refused to entertain Olson's modification request, stating that the issue of how much support Olson owed was moot until the future child support awards described above had been paid. Specifically, the court remarked in its final order regarding Olson's obligation to Wendy that "the Modification is Moot because twenty months of future support was awarded in a Fraudulent Transfer Act case on June 19, 1998." Similarly, in its order on Olson's obligation to Diane the court stated that

> the Modification is Moot because 2 year's [sic] of future support was awarded in a Fraudulent Transfers Act case on June 19, 1998, in which fraud was found. Mr. Olson can petition or move to modify child support in two year's [sic] when the money being held in the WSSR registry is disbursed and Mr. Olson has to begin making child support payments out of wages.

Olson appeals the trial court's refusal to consider his modification request.

## DECISION

We must decide whether a parent's request for child support modification under RCW 26.09.170 may be heard while a bond or other security to ensure support payments is maintained under RCW 26.18.150. We disagree with the trial court's conclusion that the existence of court-ordered

---

[4]Since Olson filed this appeal, we have affirmed the holding from the UFTA case in an unpublished per curiam opinion, rejecting arguments by Olson and Townsend relating to personal jurisdiction, the admission of certain exhibits, indispensable parties, and the statute of limitations. *See State v. Olson*, No. 42951-5-I (Wash. Ct. App. Dec. 13, 1999).

secured payments under the latter RCW section renders moot a modification request under the former section.[5]

■ RCW 26.09.170 and 26.18.150 have different but equally important purposes. A parent may petition the court for modification of his or her support obligation under RCW 26.09.170 for specified reasons, including income changes or "substantially changed circumstances." That provision thus ensures that a parent's support obligations are adjusted fairly and proportionately according to changes in a parent's unique circumstances.[6] In contrast, RCW 26.18.150 gives the court discretionary authority, in any action to enforce a support obligation, to order a parent "to post a bond or other security with the court . . . in the amount of support . . . due for a two-year period." Then, if the parent fails to fulfill his or her support obligation, "the person entitled to receive payment may recover on the bond or other security . . . ."[7] Thus, the purpose of RCW 26.18.150 is to ensure that court-ordered support obligations are fulfilled, regardless of the actual amount of the parent's obligation. But it does not follow logically or legally that, as respondents argue, the existence of a bond or other security under RCW 26.18.150 prevents a party from seeking modification under RCW 26.09.170 for the duration of the security posted. Indeed, such a conclusion would write RCW 26.09.170 out of the law whenever security is ordered even though a parent's income or circumstances could change, perhaps drastically, during the two-year period for which security is ordered.

■ We therefore hold that even when a bond or other security is in place under RCW 26.18.150, a trial court should *consider* a parent's request for support modification, regardless of whether payments are actually being drawn from that security. The security would, of course,

---

[5]A case is moot when the court cannot provide meaningful relief. *BBG Group, LLC v. City of Monroe*, 96 Wn. App. 517, 521, 982 P.2d 1176 (1999).

[6]A court may make adjustments only to "installments accruing subsequent to the petition for modification . . . ." *See* RCW 26.09.170(1)(a).

[7]RCW 26.18.150(2).

remain intact for the time period originally imposed. In the event the court reduces the parent's future support obligation at the modification hearing, the court may reduce the amount of the security accordingly.

Turning to the specific circumstances here, Olson argues that when the court reviewing the quitclaim transfer of his home required him to post bond, it was "to ensure that he promptly makes good on his future support obligations and not a determination that sets his current child support to the amount of the support bond." Accordingly, he contends, the trial court should have considered his later support modification request. We agree. In its petition to set aside the fraudulent conveyance and for payment of past and future child support obligations, the State specifically asked the court to require Olson "to post a bond for two years' future child support for each child under RCW 26.18.150." Although that court did not refer explicitly to either a bond or that section of the RCW in its findings and conclusions, it is clear that it essentially treated the funds from the sale of the home as security for his future support obligations. And, because Olson had consistently failed in the past to fulfill his obligations and was unable to do so at the time of trial, the court treated those funds as the source for Olson's future support payments. This is therefore a case in which the security provisions in RCW 26.18.150 were in place, a situation that, as we explained above, does not preclude consideration of a modification request. While the court ultimately may decide not to modify Olson's support obligation in light of the available funds from the sale of the home or for other reasons, it should have considered his request for modification.

Reversed and remanded for proceedings consistent with this opinion.